and call our second and last case of the day. Henry Andrew Bressman, and the case is Baxter v. Bressman, number 16-3244. Mr. Folkenflik and Mr. Sirota. Your Honor, if I may bring up a preliminary matter first, there are district court... You better note your name for the record. May it please the court, Max Folkenflik, Folkenflik and McGarrity, counsel for the plaintiffs. A preliminary matter first, there are district court orders below sealing the proceeding I have moved before the court, which was referred to this panel for determination... The fact is one of the questions I want to discuss in this argument. My only question was to alert the court to it. I alerted the clerk to it if the court wants to take any action. I can't see what the argument today would have to do with anything that's sealed. The only issue would be discussing the matter of the amount in terms of the settlement below that was sealed. I think that's the only issue. We can put X dollars in for that. Remember the old I Love Lucy show? You got some explaining to do? You got some explaining to do. Whatever the amount was for that other matter, how could that possibly not be an offset against the amount you are claiming here, especially when you claim that amount due ex parte? Well, I didn't claim it to be due ex parte. I claimed it to be due in a proceeding where the defendant was on notice of the fault. It could not be an offset if it was not a proven to be with respect to the same issues on which the judgment was held of the third party who settled. So the issue here is really whether, actually it goes somewhat beyond that, but really whether, number one, whether there was a set off defense at all if Bressman chose to waive it, which he did consciously, and the record seems to show with knowledge that the settlement had been made. Well, now, didn't the bankruptcy court on remand determine that he did not waive it? The bankruptcy court determined that it was not relevant, Your Honor, respectfully. It did not determine that he waived it. He said he didn't need to determine it. And that really goes to the basic flaw in the determination of the bankruptcy court and the district judge below. First of all, their basic flaw is that they treated this as a dispute between the court and the plaintiff's counsel, and it was not. It was a motion to vacate a judgment. Well, when you say they treated it as a dispute between you and the court, I mean, clearly nobody was expecting, and there's really not a vehicle for people to say, and now I am disputing with you, the court, directly. I mean, there are motions that go back and forth, but in this instance, the court seemed to be saying, in fact, I think it was saying, you misled us. You actively, knowingly misled us. You led us to believe that there had been no recovery here, when, in fact, there had been some recovery here, and you would not have received the default judgment, the troubling, and all the interest associated with it had you been, as an officer of the court, forthcoming as was incumbent on you to be. That's what I understand their reasoning to be. Now, you can correct me if I'm wrong, and what I want to know is, since you attack that by saying, hey, they were wrong as a matter of law because under your case law, Third Circuit, under Herring, there has to be perjury, that's what you say in your brief, I'm trying to figure out where you found that in Herring. What is it in Herring that tells you there has to be perjury in order for there to be the kind of active intentional misleading of the court that Herring says is actionable? Well, actually, Your Honor, respectfully, let me take Your Honor's comment separately. First of all, I'll go with the perjury comment. The reason I say that about Herring is Herring expressly so stated. It said perjury is required to be shown, but not sufficient. And it also said that with respect to the perjury that must be shown, it must be shown that the statements made were literally not capable of being interpreted in a truthful way. Isn't this really similar to the securities laws? It isn't just false statements, but it's also omissions. Actually, Your Honor, respectfully, no it is not. Let me if I may do some explaining about why this happened. Do it in the context of this. The judgment you had was $15.6 million against Mr. Bressman. Correct. And something is supposed to come off of that. You haven't told the court that there is an offset that has to come off of that. It's the amount that was in the settlement with the other parties. So when were you ever going to tell the court? If you omitted it, you've got judges out there saying, like Steckroth, Judge Steckroth, that this looks like a fraud on the court. And the only reason that Judge McNulty didn't go and say definitively this is a fraud on the court that is subject to sanctions is because he thought that Judge Ramos, to some extent, had let you off the hook. Well, Your Honor, let me, if I may. Go ahead. First of all, I was under a court order that prohibited me from disclosing the existence. Not to a court. Not to a court. Not to a court. That's been well explained and I think very cogently explained. And if you were to overcome by the confidentiality section in the settlement agreement, which actually talked only as to amounts and not to the fact of settlement, you could have put down in the papers, of course, there has been a settlement and a certain amount recovered, which I'm not at liberty to discuss. And then the court could have gotten in touch with Judge Kettle and that could have been resolved. But there was no mention at all that any such settlement had occurred. Well, Your Honor, respectfully, I think Your Honor has misinterpreted the order of Judge Kettle. Well, I've read it. I don't think I've misinterpreted it. And I think I've interpreted it very well. The order prohibited disclosure of the existence or the terms of the settlement. Can I read what the order says? Yes. And which order is Your Honor reading? Because there was a so-ordered stipulation of the parties that used that express language that Judge Kettle so-ordered on October 18, 1998. Okay. And then there was a later modification of the order, but it prohibited disclosure but allowed disclosure upon inquiry of a regulatory body. Now, I've had many confidentiality agreements in my life. Many of them have similar terms. And I don't believe that it is honorable to go to a regulatory body with an agreement of that type, let alone a court order of that type, and say to the regulatory body, wink, wink, regulator, why don't you ask me a question and I'll tell you the answer. And now, I firmly believe, and Judge Kettle and Judge Ramos found, I believe, and ruled that I was acting good faith on my good faith belief of what the order provided. So that the issue here is not merely what the order provided, not merely whether Your Honor or Judge Zekros might have a different interpretation, but whether there was clear, unequivocal, and convincing proof that I did not have such a belief. I believe that Judge Ramos' finding precludes the finding of the regulatory body. When are you ever going to tell the court that if I get this $15.6 million judgment against Mr. Bressman, that, by the way, there is an offset? I can't tell you what it is, but there's an offset. When are you going to tell somebody that? Your Honor, respectfully, I don't believe that there is an offset unless the proof is made. Now, the proof must be made under. So you're going to collect the $15.6 million and never tell anybody that there might be an offset. It's up to them to come out and say, oh, by the way, I knew that there was this settlement. I knew that we need to find out what it is. And whatever the $15.6 is, you've got to subtract that. Is that what you're saying? Your Honor, respectfully, no, I'm not. What I'm saying is I never expected to collect anywhere near that amount. There never was going to be a day when that was relevant. And my actions prove that. For 10 years following his judgment, I made no attempt to collect one penny. You thought he was a stone and you couldn't collect anything. But then when you found out he was in other deals and that possibly there might be some assets there, you went after him. Yes. And when I found out, I never expected even then to collect the amount of any possible set-off. Now, under McDermott, under the Supreme Court rule, set-off is the result of proportionate fault. And there is no evidence at all that either Blair or Davis, the parties who settled, had any proportionate fault at all. Now, it might be different if I fraudulently concealed this from Mr. Bressman. It might be different if he didn't know. There is evidence in the record. But the concern is that you didn't tell other judges, Stackroth, Ramos, McNulty, necessarily what was going on. You didn't even tell Judge McNulty what the disinclination of Judge Salas was to give you any type of emergency relief. Well, Your Honor, I wasn't in front of Judge Salas. Other attorneys were. And I didn't hear her say. I understood that she was disinclined. That's what I was told. Disinclined to grant the relief. And then when Judge Ramos entered his order, a new application was submitted to Judge McNulty, which was entirely different. Merely attempted to not listen to more disinclination. But it was in the same case without any indication that this matter had previously been before the court. Respectfully, Your Honor, that's not true. I put in my affidavit that it had been previously before Judge Salas and that she had not ruled, which is emphatically true. That's what Judge McNulty found. She had never ruled. She had expressed an indication. Apparently, on the record, which I had never seen at a hearing which I wasn't present at. But I disclosed to Judge McNulty because I wanted to give him the chance to do what Your Honor suggested. Many experienced judges, when they hear something like that, they might call the other judge if they're interested in what happened. He might have asked me what happened. But that's not what happened. I alerted him to that. I appeared in front of the clerk and said, should I mark the case as related? The clerk said, no, it's not pending. I said, I want to speak to your supervisor because I'm not accepting the opinion of the clerk at the desk. And I got the supervisor and asked the same question. And they told me not to mark it as related. Now, why on earth, Your Honor, would I not disclose that settlement to the district judge? Indeed, that's my question. Because we're wondering how thoughtful judges looking at the full record could come to the conclusion that it looked to them like there was intentional deception. So since your time has already run, I want to make sure I have the chance to ask this question. You said that hearing requires a finding of perjury. It does talk about perjury. But I'm still looking in the case for some place where it says that perjury is an element. It doesn't say that. It does lay out. Actually, Your Honor, and I cited in my brief, and also it's clear in the language, perjury is required but not sufficient. And let me direct Your Honor to the page. Yeah, give me language. Because when I read it, what I see it says is we agree that perjury by a witness is not enough to constitute fraud upon the court. Right. Perjury is not enough. Right. And to commit perjury, it says, if I may quote, In perjury cases, the plaintiff must prove that the allegedly perjurious statement is not subject to a literal, truthful interpretation. That's a clue. And this is not a perjury case. I don't see them saying anywhere that you perjured yourself. I hear them saying that you committed an intentional fraud, that you're an officer of the court, that that fraud was directed at the court itself, and that you, in fact, deceived the court. In other words, the elements do not require perjury, do they? They don't say there must be perjury. They say an intentional fraud, which can occur without perjury. Wouldn't you agree? An intentional fraud could occur without perjury. Yes, I agree. Okay. But let me say this, Your Honor. That is not true that a fraud on the court can be found without perjury. Because, Your Honor, if I may, just to address this point. To allege false statements were made, and that would include statements that were false because of an alleged fraudulent omission, is to allege perjury. No, it isn't. That's not just the moment. That's what Heron said. Perjury, I'm reading here. I've got it in front of me when you say that's what it says. It doesn't say that there has to be perjury in order for there to be a fraud on the court. It's talking about, in a perjury case, that perjury alone may not be sufficient. But perjury is a false statement under oath. An officer of the court makes all kinds of statements to the court, all kinds of representations, which are not under oath. If it were, in fact, the case that there had to be perjury in order for there to be a fraud on the court, you would narrow the possibility of finding a fraud on the court to an extraordinarily limited number of cases. The point is that you have to be able to trust officers of the court when they're speaking to you under oath or not because they're officers of the court. So there doesn't have to be perjury in order for there to be fraud on the court, does there, Mr. Folkensnick? I believe that if you're led – first of all, I made no statements to the court that were not under oath. Stick with me on the law. On the law, I believe that nondisclosure, that a securities law approach of a fraudulent omission, cannot form a basis of a finding of fraud on the court. Because where is your authority in the law for that? And let me say, every circuit who has expressly so ruled – that's the way I read Herring. Your Honor may read it differently. But every other circuit who has expressly so ruled – and I cite Kupferman case in the Second Circuit, the Shaw case in the, I believe, Tenth Circuit. There are a bunch of cases that I also cite in my reply brief at page 11. I cite also the case of Wilson, the Johns Manville in the Fifth Circuit. In Kupferman – Are they just as clear as Herring is on this point? Actually, they say, characterizing – Kupferman says, characterizing nondisclosure of the release – and that was a release. There was no evidence required to be proven. Characterizing nondisclosure of the release as fraud on the court would be going too far. In Johns Manville, they said, the mere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to fraud upon the court. In Shaw, the Tenth Circuit said, nondisclosure to the court of facts allegedly pertinent to the matter before it will not ordinarily rise to the level of fraud on the court. In Herring, the discussion in Herring of perjury, because what happened in Herring was – You don't have to tell me. The definition in Herring, as I thought it was, an intentional fraud by an officer of the court, which is directed at the court itself, and in fact, deceives the court. That's correct, Your Honor. And then because of long precedent by this circuit, including precedent in cases that members of the panel sat upon, if there is a newly discovered evidence, for example, that was not disclosed to the court, which is what we're really talking about, although the evidence was known to you. You knew about the settlement, didn't you? Oh, of course I did. So, I mean, you're the relevant one. It wasn't really disclosed to you. No, Your Honor, but respectfully, all of this court's and Supreme Court precedent on fraud of the court requires more than that. This is a dispute. This is not a sanction motion. This is a dispute between the plaintiffs and a defendant as to whether the plaintiffs can keep their judgment. Now, that is different than if it were a sanction motion, and the courts below treated it not as a motion for relief from a judgment, and the requirements, for example, in the Supreme Court in Begley, and requirements that have been restated by non-presidential decisions in this court, as well as presidential decisions such as Koltak, which was a panel I believe you sat on, Judge Ambrose, that there must be a grave miscarriage of justice. What happened here, Your Honor, is that there was a settlement, which I thought to be irrelevant to actual collection ever, which I was prohibited by a court order from disclosing the existence of, and of course I would have done it, Judge Jordan, anyhow. It makes no sense for me not to do so. I never thought it mattered. I read the brief. Let me just put those red lights on before you. What about this case needs to be under seal? The amount of the settlement. What else needs to be under seal? Your Honor, I think that the only question of whether, because there's an amount under seal, but Judge Ramos and Judge McNulty ordered the entire proceedings to be under seal. So I don't know that that sealing order goes beyond disclosure. Well, what, in your opinion, needs to be under seal? Well, Your Honor, when we initially commenced the proceeding, we wanted it to be under seal because of the allegations of misdepressment and we wanted to be sure there were no collateral consequences. So I don't know if anything other than the amount of the settlement needs to be under seal. But the issue here, and if I may just raise one point about the scope of review, I didn't take a position as to whether it's de novo or clearly erroneous. And there is some indication in Herring that it's de novo review. Although, Judge Ambrow, in preparing for this argument, I noticed your opinion and Gillespie v. Janey, in a non-precedential opinion, takes the position that it is de novo review. Here what happens, Your Honor, is there was a motion for relief from a default judgment, which was granted without a showing of any showing on the merits, any showing that Bressman was entitled to a set-off, which is his burden under clear precedent of this Court, without any showing that Mr. Bressman had an excuse for a default or that he was not aware of the evidence of the time. And there is substantial evidence in the record that there was. And then the Court just went on affidavits to render its decision without any fact-finding. But what you've got here, and you know as well as I do what the big issue is. You've got Judge Stackroth saying that your actions throughout the entire duration of this case and related proceedings from March 18, 1999 until the recent present illustrate a pattern of deception and misrepresentation to courts that unequivocally constitute, under these circumstances, an intentional fraud on the Court. You then appeal to the District Court, and District Court says, yeah, there's a lot there, but Judge Ramos did things here that I'm not going to try to interfere with what Judge Ramos did, whether I agree or disagree with it. Now you decide to appeal, which I still don't quite understand why you would not just let this dog lie. But you've appealed, and now the issue is front and center as to whether Judge McNulty was just being kind or we should revisit it, and that's where we are. Well, Your Honor, I don't believe Judge McNulty was being just kind with respect to the sanction motion, and that motion is not under appeal. But it could be now that you've brought this whole matter up here. I don't think that. I mean, this could be the subject of a disciplinary proceeding, could it not? Your Honor, I don't believe so. And here's why I don't believe so. If there's a fraud on the Court, you wouldn't be subject to a disciplinary? If there's a fraud on the Court, certainly I would. But here, if the nondisclosure was of a fact that was not material in a default proceeding where the defendant said he was aware of the settlement, he had a conversation with me on the phone. Wait a minute. You're saying there was a fact that was not relevant? Yes. The set-off isn't relevant unless proven as a matter of law. Under McDermott, the set-off is an automatic. Back to my point. If you get the $15.6 million judgment, were you going to collect it, or were you going to subtract at that point in time the amount of the settlement? The Court underwrote, and I believe, and I always believe, that I would never seek to collect any more than the amount of the judgment minus the set-off. That's a way of dealing with the equities on my own. And I never was going to try to collect that amount. There is not a single shred of evidence that I ever had a belief for a moment I would collect anywhere near that amount. When you say there's no shred of evidence that I was going to collect that amount. Right. Of course, the natural comeback to that is the shred of evidence is you made a representation to the Court and, in fact, obtained a default judgment, had it trebled, and then got interest on it. And that reflects an intent. No, it does not, Your Honor. What does it mean to go to Court and make representations to the Court, then? Your Honor, I was entitled to a treble-damaged judgment. If there was any set-off, it would be against that judgment. Mr. Bressman chose never to raise the defense of set-off. I was under Court order not to disclose the existence of the set-off. So, in your world, if he doesn't bring that up, that you could get the full $15.6 million and forget the amount of the set-off. Correct? Theoretically, I... That's the logical conclusion of what you've just said. Your Honor, theoretically, I could, and I didn't seek to collect $1 on the settlement because I never thought I would. So, I'm representing clients. My clients wanted to know why we didn't pursue a judgment against Bressman. And you can see from the timeline in the record, it wasn't something that I considered an extremely high priority or made any effort to get any money from Bressman or expected to get any money from Bressman. At the time that I...after I got that judgment, he was incarcerated for a period of years. I thought I had an obligation to my clients to seek a judgment. I thought I had an obligation to District Judge Kodal not to disclose the existence of the settlement. I thought, in good faith, that the existence of the settlement was irrelevant because it was a matter that Bressman had defaulted on. And I thought, in good faith, it was meaningless anyhow. And for 10 years, I not only didn't try to collect, Judge Ambrose, I didn't try to collect $15 million. Because there was nothing to collect. That's right. Yeah, well, I mean, that's not painting you with virtue. It's painting me as not having a belief that I was ever going to see that excess money. Why on earth wouldn't I have discussed it with the court, absent the court order, if I didn't believe that it was meaningful? A $5 million judgment, a $10 million judgment would have been worth just as much to my clients as a $15 million judgment. Isn't the only thing that a judge can infer, based on your conduct, not what you're telling us you believe, is that you were seeking a $15.6 million judgment with no set-off told to the court at that time, and Judge Zekroff believed that you were, in effect, by that omission, deceiving his court and also other courts, other district courts. Well, Your Honor, his claims that I deceived other district courts is clearly contradicted by the findings of those district courts. Judge Ramos didn't just let me off the hook. Judge Ramos found that there was not a single material statement that was not true. And there were no statements that were proven to be untrue by fuller disclosure. Judge McNulty found that the only disclosure I ever made to him was technically true. And so I just said, explicitly, that Bressman has not made any payments. Now, this gets to the core of the case. Whose obligation is it to raise a defense of set-off? The court knows, Your Honor, respectfully, it is not mine. If Mr. Bressman appeared in court, would it be mine? If Mr. Bressman had chosen, that would be the court. How did we get to that being the heart of this case? Because the heart of this case at this juncture, it seems, is not whether Mr. Bressman is a good person or a bad person. He's a convicted felon and not a person who engenders a whole lot of sympathy. But the question that we're wrestling with is, are you rightly the subject of one of the most serious things that can be directed at a lawyer that is intentionally misleading the court? Responsible for a fraud on the court. Irregardless of, I should say, irrespective of Mr. Bressman's behavior and how worthy or unworthy it is, the question is, did you seek to mislead the court when you went to court on an ex parte basis and got a default judgment, which didn't mention that there was a substantial sum of money that had already gone into your client's pocket associated with these very same events? That seems to be the heart of this, and we ought to stay focused on that. Let me focus on that, Your Honor, because the question is, did I intentionally deceive the court about a matter that was material to the decision to be made by the court? And it was not material because, in my belief, it's not material as a matter of law because that subject of the setoff was ignored by the party who had the obligation to prove it. Now, Your Honor may disagree. You're in an ex parte circumstance at that point, right? Mr. Bressman certainly shouldn't benefit from defaulting and get more than he could have gotten had he shown up. In the application to execute on the judgment, it was ex parte, correct? The application to execute on the judgment. And in connection with that application, you filed sworn statements to the effect, to date, more than 10 years later, plaintiffs have not seen a dime of this amount. I did not file a sworn statement to that. My adversaries said that in their brief. That is a false statement. Judge McNulty pointed out that I had not made that statement. That's just untrue. The only thing I said, and Judge McNulty said that explicitly in his findings on sanctions, he said, I never made such a statement. All I said was the technically true statement that the, Mr. Bressman had not paid a penny. So the question here is, can we allow the judge's displeasure at my nondisclosure, which I assure you, Your Honor, was in good faith. The same nondisclosure Judge Ramos found was in good faith because I thought I was required to. Let me ask this question. Let's assume the amount of the settlement was $15.6 million. Yeah. Would you have gone after Mr. Bressman for $15.6 million? I would not have. I would have told my clients I should not proceed with the case. So it's less than that, but it's still a substantial amount. That's correct. And absent, why, if I would not attempt to collect a penny, why on earth would I have not given the court a heads-up and disclosed to the court the existence of the settlement if I was not under court order not to do so, and obligated by the Honor as an attorney not to go through the back door and wink-wink at the court and say there's a settlement in existence, when I thought that settlement was an immaterial both as a matter of law and as a matter of fact? As a matter of fact, you've called it yourself a set-off. If it's a set-off, it has to be subtracted from the $15.6 million. I said it was a set-off at best if he proves it. Now, as a matter of law, it's his obligation. Wait a minute. What does he have to prove if the amount existed as to the set-off? We know that there was a settlement. He has to prove that it was for the same crimes for which he was convicted, and he has to prove under the Supreme Court standard of McNulty that Davis and Blair, not anybody in their organization, but J. Morton Davis, who was affiliated with D.H. Blair & Co., or the corporation Blair & Co. was responsible for misconduct. Now, you can look at the complaint, and you can see there were allegations made about employees at D.H. Blair, but under the Are you here telling us right now today that he could not prove that? I'm telling you he could not prove that. He did not want to prove that, that any misconduct by employees of Blair & Co., which might have been cause of responsibility that they didn't want to get into, I'm telling you that it could have been employees who were not acting, and they were not liable for him to respond to that superior because those employees were acting illegally. I am telling you as a matter of fact that the only reason that case settled was Mr. Davis' deposition had been noticed. He had received the target letter from the district attorney. He didn't want to testify. I got a call at night, and I was told, we've got to settle this before the deposition occurs tomorrow. I negotiated, and I got a settlement. I have no reason to believe, and I assure Your Honor, I mean, Your Honor is skeptical about my representations to the court, so I hope I can overcome that. I assure Your Honor that I did not have evidence in my possession that would have rendered Davis or Blair liable for $1 of Mr. Bressman's goods. Okay, and there's an easy way out for you. You could tell the courts that there is the possibility that someone may claim there is a setoff, that you do not believe it exists as a matter of law, but as an officer of the court, you are telling the court that that is an issue because you are dealing ex parte with the court. In other words, the other side isn't there to represent itself. The other side isn't there because the other side had chosen to not make the case that Your Honor, that I just represented to Your Honor. You mean make the case in 2004 when you got the default judgment? I mean make the case in 2004 when I got the default judgment. I'm not sure whether you've hidden that point, as if the circumstances leading to the ex parte status are material or matter. Does it matter whether Mr. Bressman is at fault for not being in the courtroom? Does that give you greater latitude to be deceptive in your behavior or to fail to bring things to the court's attention? Or does the fact that you're there ex parte all by itself, no matter what the cause of it is, put an obligation of particular care upon you to be forthcoming? And Your Honor, it does matter. And as I assured Your Honor, I would have given the court a heads up had I not been barred by a court order that prohibited me from disclosing the existence of the settlement. To a court? To a court. To a court. To anybody. Look at Judge Kodal's more recent order. He was asked to lift his court order. He was asked to lift his court order in 2013, well January of 2014, to lift his court order and to allow disclosures to courts. And what did he do? He allowed disclosure only to three specified judges, Judge McNulty, Judge Ramos, and then when I pointed out to Judge Kodal, I pointed out to Judge Kodal, that there was some possibility that Mr. Bressman would bring a motion to reopen the proceeding and Judge Steckroth should be included in that. Judge Steckroth was included in that as well. He did not allow disclosure to courts generally. He explicitly limited the disclosure to those courts. And actually I thought... But the only thing you're telling us at the outset of today's oral argument, that the only thing that really would be confidential and shouldn't be disclosed would be the amount of the set-off. That's as of today. Because what happens, Your Honor, which I discovered later, and I've been doing this for a while, this goes back a long time, I never used to look at the court's docket, I kept my own docket in my law office, but the court's docket had, unknown to me, inappropriately disclosed the existence of the settlement on the open docket. So when I found that out, because somebody, Mr. Bressman's counsel, at that time it was a guy named David Wander, looked at my disclosure that said Mr. Bressman hasn't paid, looked at the fact that it may or may not have been aware of settlement, because Mr. Bressman filed sworn affidavits that he was aware for years, aware for years that plaintiffs had received 100% of their loss back. Aware for years. And so I never thought there was an issue of Mr. Bressman being trapped by having... So if he was aware for years that plaintiffs had received 100% of the amount, then anything that you would get would be, quote, a double recovery, close quote, wouldn't it? Because the single recovery rule is overridden by the treble damage provision of the RICO statute, and under Bauman's presidential decision by the circuit, trebling has to occur first before there's any set-off of any nature. So I certainly would never have risked my reputation, risked disciplinary action, played fast and loose in any respect with Judge Stackroth had I believed that any of this was, A, not barred by court order, B, waived and irrelevant explicitly by Bressman because he defaulted with knowledge of these facts, and C, factually irrelevant in any reason because all of this was funny money. It was not meaningful. So if this is all funny money and you wouldn't want to do anything that would put yourself at risk, why in the world did you appeal? Why did I? I'm obligated to my clients to appeal, Your Honor. My clients have the judgment that even if you apply the full set-off, and this court has the ability to do that, and Judge Stackroth had the ability to do that, to write off the whole amount and leave the rest of it intact. And Judge Ramos indicated that there's still a lot of money as far as I can tell. If you're so concerned, and you should be, about the risk to yourself, and as I said, you should be, why not say to your client who wishes to appeal, I think you need to get another attorney with regard to this? Because I know the facts so much that I would not take this, I would not give up the appeal. This is not rocket science. Other people could easily come up to speed on what the facts are. Other people could come up to speed, but what difference would that make? I'd appeal or they'd appeal. I didn't appeal because of – I appealed out of concern for my clients. You're missing my point. By your taking the appeal, it isn't your client that's getting the flak here. You're putting yourself in the crosshairs. Your Honor, that would be true if some other attorney was standing up here as well. And, yes, I know that. I have an obligation to my client. No, the other attorney would say, I just came into this case. And the prior attorney, there's some question, but you're going to have to look at it separately because Judge Ramos looked at it and decided that there wasn't anything sanctionable here. Judge McTolley, based on what Judge Ramos did, decided there wasn't anything necessarily sanctionable here with regard to the attorney. And beyond that, I'm just here trying to represent my client. And why would those findings not equally be true with me standing here? Your Honor, the fact of the matter is that let's separate out what Your Honor feels is potentially misconduct from what Your Honor feels is at issue on this appeal, which is the vacation of a judgment. Under longstanding precedent from the Supreme Court in Begley, from this Court in Kotak, as I said, Your Honor was on that panel in a precedential opinion. The two issues, the public interest in that judgment is to apply res judicata that litigation must come to an end. Counterfeiting that in some unusual, extraordinarily exceptional cases is where, if you allow the judgment to stand, there would be a grave miscarriage of justice. Here, vacating the judgment is a grave miscarriage of justice. My clients are entitled to a RICO judgment in Trebling. If you want to take the set-off amount, in fact, I offered it openly to Mr. Sirota, to Judge Speckroth. If you want to deduct that, discount that amount, it's immaterial. That's fine. I never tried to collect that amount. I'm not trying to pursue it now. I never had any expectations. It is immaterial that there is a substantial amount of settlement that could be, and many would say would be, set off against the $15.6 million. You say that's immaterial? I say that's immaterial because we're never going to collect more than $10 million. It's never going to happen. And it's immaterial in fact, and it's immaterial in law, because Mr. Bressman never even alleged. Your Honor, he asked me flat out, am I saying Bressman couldn't prove that? Bressman hasn't even alleged that. Bressman hasn't sought to prove that. And how is Bressman going to prove it initially when you make an ex parte, take an ex parte matter before the court? Bressman is going to prove it initially by not defaulting, showing up in court and seeking a set-off. That's in the Wayback Machine in 2004. That was in 2004. That's correct. That was in 2004. And he could have shown up. He could have. So whatever he did in 2004 bound him with regard to what you did not tell the court in 2013-14 with regard to there is a possible set-off. I don't think it exists legally, but there's a possible set-off. I just want to let you know, court. Your Honor, the fact of the matter is I felt that, and Judge Ramos agreed that he accepted my representation, that I felt that the set-off was irrelevant at that stage because the amounts being collected so far exceeded Bressman's ability to pay that it was immaterial whether he had a set-off or not, and I was still under a court order that prohibited me from disclosing that. The minute I discovered that I could disclose the existence of the settlement, and this goes to why I believe my representation, the minute I disclosed that I could disclose evidence that there might be a settlement, I immediately disclosed it to Mr. Bressman's attorney in October of 2014-13. I told him where the set-off came from and identified it as an issue of whether or not payments by other defendants might allow him to seek a set-off against the judgment. What is the natural reading of this statement? With post-judgment interest, the judgment's current value is $30,895,913.39. To date, more than 10 years later, plaintiffs have not seen a dime of this amount. What is the natural reading of that? I didn't make that statement, Your Honor. I'm reading it from pages 303 to 304 of the appendix. Now, when you say, I didn't make that statement... That was in a brief I didn't write. It was in a brief I guess I had some responsibility for, because my name was on it. But it's cited to my affidavit, which said, it cited the language of my affidavit, and that said, the language said, Mr. Bressman has not made any payment on that judgment. Your name's on the brief, right? Yes, it is. Yes, it is. So the question, Your Honor, that statement was never made by me. And what certainly, and that statement was made... I don't know why you say that statement was never made by me. What does it mean for you to put your name on a brief with that statement in it? How, I mean, I'm not sure how that helps you to say, I never made that statement, when your name is on the brief. That's correct, Your Honor. I hired other lawyers to do it. I bear some responsibility for it. It has zero to do with the representations made in 2000 to 2004. There was no such representation ever made at the time the judgment was entered. I understand, I understand the concern, Your Honor. And frankly, although the court may not believe this, I wish they would, had I not been under court order, had the set-off been material in fact or in law, and just had I not been under court order, irrespective of whether it was material... I keep saying this, and we're going to let you sit down a second. You were never under a court order not to tell a court that there was a possible, plausible claim of a set-off. I never thought of framing a disclosure that way, and if I said that, I don't know whether that would violate the court order that prohibited the disclosure of the existence of a set-off. How could that possibly violate a court order? I was barred from disclosing the existence of a set-off. You're not barred from disclosing to a court that there is a plausible argument that there may be a set-off here, and it's not insignificant, the amount of set-off, if there is one. Your Honor, I... And you wouldn't be standing here. Life would be easy. Yes, it would. And if I had thought of that way of navigating out, I would have given it a lot of thought, and I wish I had made that disclosure. But that's not what I thought I was being asked to disclose. I thought I was being asked to disclose the existence of the settlement, which Mr. Bressman chose voluntarily not to raise. There's a lot of evidence in the record... He defaulted in 2004. I'm not sure what he was thinking at the time when he defaulted. He just didn't respond. He probably didn't respond because he didn't have any assets that could possibly pay a judgment. That's right. That's right. He may have felt that it was immaterial in fact. Whether he got a judgment against him for $10 million or $15 million or $50 million didn't matter. That may have been his thinking. But the issue that should concern the court, because this was an adversary proceeding, and, yes, Mr. Bressman defaulted. But I am not aware of a single court ever that has held that a lawyer has an obligation to inform the court of possible defenses the defendant could raise and chose not to. And I nonetheless, nonetheless, absent the court order, would have disclosed it. Nonetheless, my actions thereafter prove that I didn't think that it was meaningful in any respect. I thought it was, as Your Honor's comments about Mr. Bressman suggest, entirely irrelevant fantasy money. The judgment was required. Now, if I thought there was a conflict, if I thought there was a set-off that was required to be entered, like in Kupferman there was actually a release that was issued that would have, without proof, eliminated the liability of the defendant, if I thought that Mr. Bressman was entitled to a set-off, or if I wasn't, or if I was not under a court order, whether I thought he was entitled to it or not, I obviously would have disclosed it. It would have been just exactly what you said. Actually, I would have done more. If I was not under the court order, I would have said, there was a settlement in the Barron versus Bressman case with some of the defendants. And the record reflects that Mr. Davis and D.H. Blair were dismissed from the case on my motion under Rule 41. So there were some red flags in the record, as well as a later disclosure in the record, of the fact of the settlement due to a clerk's error. The fact of the matter is, Your Honor, I was in a position, and if I thought that either I was obliged to violate the court order or obliged not to seek recovery at all on the judgment, for example, the question Your Honor posed, if my clients had received $15 million, I would not have sought the release. You've glommed onto it here that there are certain things that you think should remain under seal. Only the amount of the settlement. And that's all you had to do with regard to the other judges in this matter? I don't know. That's now, Your Honor, because there was a disclosure, public disclosure, in the record on the docket sheet of the existence of the settlement. And once it is public... So what you're really asking us to do in putting your reputation on the line is you're asking us to come up with a decision that may put you and your reputation at risk with regard to a matter that you say is irrelevant in terms of the amount of ever really collecting on this. And I don't understand. I just don't understand. Tell me the reason you appeal is because you're representing a client. But why put yourself? Your Honor, I don't think the risk to myself would have been any different whether I appealed or a third lawyer appealed. I don't believe it. The third party lawyer would have said the same things I'm about to say. And Your Honor would have had the same right. Yes, it's more uncomfortable for me to be here than it would be for the third party lawyer. I think I can probably explain myself better than a third party could. But I might not have satisfied Your Honor. But I don't think the questions of the third party attorney would be anywhere near as tough or searing as the questions we've asked of you. Because you were present at the scene. That's right. And it is tough. And it is difficult. And I faced this in two sanction motions and prevailed upon two law school district judges to accept my explanation that it was not any intent to deceive the court. But what you risk here is having some type of disciplinary proceeding under Federal Rule of Appellate Procedure 46 for conduct on becoming an attorney. And why take that risk? Your Honor, I think that the obligation to try and get my client's fair judgment reinstated is what it is. I don't know that I perceived that this court would feel that the allegations with respect to my nondisclosure on the basis of a good faith belief that a court order required it, and that the nondisclosed fact was not material to the decision Judge Speckroth ultimately made, because I believe it would have been reversible error not to enter a judgment for $15 million. And because under the RICO statute, a party seeking a judgment is required to be paid the full amount of their loss, and that the loss from the RICO activity trebled. And so I didn't believe that it was material. Now, obviously it gives me some concern that Your Honor feels otherwise, and that there is a risk of that. But I assure Your Honor, and I assure this panel, that all of my actions were undertaken in good faith, and neither Judge Ramos nor Judge McNulty found I misled them, misrepresented them. Judge McNulty raised the issue on the judgment, on the issue of vacating the judgment, of whether or not there was a misleading nondisclosure. As I said, I think the settled case law, and I think the implication of Karen, is in the clear, unequivocal, and convincing evidence standard, is there is no clear, unequivocal, and convincing evidence of any intent to defraud the court. The evidence that exists, such as it is, is equivocal, and to me, at least, unconvincing. The fact of the matter is that I didn't try, and there would be no logic behind trying, to defraud the court to inflate a judgment that I thought was uncollectible entirely. Because maybe ten years from now, something will happen that will make it collectible in part. I still feel the judgment. If it does become collectible, you get some portion of that, do you not? I have a contingency figure. All right. But the fact of the matter is that never, ever occurred to me as a realistic possibility, and my actions prove it. Why on earth would I not attempt to collect $1 on a $15 million plus judgment, actually much more than that? Why would I never attempt to collect a penny for over a decade? Because you knew there wasn't anything there. And then why would I decide to move on to the other? Okay. Your Honor, if I may just make a motion. We've had you up for an hour. We'll get you back on rebuttal. Okay. May it please the Court. Michael Sirota, Cole Schatz, on behalf of Mr. Bressman. Judge Amber, if I may go back to the issue that you were addressing with Mr. Fulkenflik for a moment on set-off. I think the timeline is fairly important because the set-off issue really arises on the second fraud on the court, not on the first fraud. As I'm sure this Court is aware, unbeknownst, and the record establishes, unbeknownst to Mr. Bressman, on August 13, 1998, that's when the plaintiff settled in the Southern District of New York and settled for an amount of money, just so we're clear, but for the full amount. Why don't we get, before we get into the facts, talk about the standard of review here. Will you, Mr. Sirota? Sure. In reviewing the case, the decision by the bankruptcy judge, the district court judge, said that vacating the judgment was not an abuse of discretion. Is that the correct standard? I believe it is, Judge. Because? Because I would first cite the court, the National Hockey League v. Metropolitan, which was the U.S. Supreme Court in 1976, which dealt with the issue as to the district court's discretion and the appellate court's ability to review it, with respect to a discovery of use and dismissal of a complaint, and this circuit on three separate- That's a sanctions decision, right? It is. Right. And we're here talking about not a sanctions decision, but a decision on an independent action for fraud on the court. Right. Isn't that different? I think, Judge, based upon that Supreme Court case and the three from the circuit, I would argue, no, that it's an abuse of discretion. Is it not the case that the court has to make findings of fact and conclusions of law in order to find that that independent standard has been met? That is, has to actually find that there is an intent to defraud. Has to actually find that it's dealing with an officer of the court. Has to actually find that the court relied on it. Those are fact findings, right? And those facts were made below. So, on a summary judgment basis, in essence, we would be looking at whether those were clearly erroneous, right? And then, on the legal question, whether legally the conclusions to be drawn were correct, wouldn't we be asking whether the law was correctly applied? That is a de novo question. Absolutely, with respect to how the law was applied. It's de novo. No question about that. With respect to the factual findings by the court under the herring for parts, I would suggest that's an abuse of discretion standard. And the bankruptcy court made those factual findings under the four herring points and applied herring properly and meticulously, as Judge McNulty confirmed. And even if this court were inclined to think that they might decide differently, I believe the standard of review would still be an abuse of discretion as in a bankruptcy court position. And there was nothing in the record that would reflect that the bankruptcy court in any way, shape, or form did anything other than meticulously follow the law, including herring. And so, you know, I just want to go back for a second, Judge, to the facts and the issue of settlement, if I may, only because I'm under the impression that somehow the court believes that the fraud was committed at the time and that Mr. Fulkenflik, in his second application to the bankruptcy court, didn't disclose the set-off. The truth of the matter is that he submitted a request for default. The bankruptcy court, Judge Tuohy, not Judge Stekleroff, asked that there be a submission as to the damages incurred by Mr. Fulkenflik's claims. That's when he submitted the fraudulent affidavit in March 1999. When referring to those damages, he just documented. All of what he called were the out-of-pocket amounts due and owing to his clients. Ten weeks earlier, ten weeks before he swore out that affidavit, his clients were paid in full. By the way, is that amount the only thing that's under seal? Yes. Should be under seal, okay. I don't know if it should be under seal, Judge, but it is under seal. So, Mr. Fulkenflik's clients and his contingency fee were paid in full. Then they applied for the RICO damages. Then they submitted another fraudulent affidavit that didn't disclose that they had been paid the full amount of the claim due and owing to the clients. And it wasn't as if... If you believe so strongly that it was a fraudulent affidavit, why didn't you cross-appeal the district court's denial of sanctions? Judge, we felt that there had been more than sufficient dollars expended on this proceeding. We had to set aside an ex parte order, which Judge Ramos did. If you listen to Mr. Fulkenflik, his sanctions decision applauds his conduct. That sanctions decision is as critical as it gets, and it points out specifically... Well, it's not quite as critical as it gets because it says, in the end, I don't think there was any bad faith here, right? As to the sanctions application. Yes. Judge Ramos specifically says that with respect to the issue of the default judgment, that should be raised with another court. And the reason I believe Judge Ramos said that is because we extracted the settlement agreement from Judge Kodal a day or two before we went before Judge Ramos on the sanctions hearing. And so, when Mr. Fulkenflik says he felt that he was obligated to hide a settlement that was approved and funded 10 weeks before he swore out an affidavit in the bankruptcy court, the transcript before Judge Kodal reflects otherwise. I think he used the words, it's frankly unthinkable with respect to a lawyer not disclosing a settlement to other federal judges who are asking what damages that lawyer's clients have suffered. So, we believe that there is no question that the herring factors were meticulously applied. Mr. Fulkenflik obviously is an officer of the court, yet we believe that the facts established it was an intentional fraud. Why don't I just speak to Mr. Fulkenflik's argument that herring talks about perjury and in fact the statements that you're relying on here were statements that he made under oath and so you would need to show perjury in order to meet the herring standard. We can't glean from the herring case that perjury is a requirement. We've read the same exact sentence that Your Honor read during Mr. Fulkenflik's argument. I think they're talking in that context not with respect necessarily to an officer of the court. There is a duty, of course, for the officer of the court to disclose and have candor to the tribunal. That wasn't remotely the case here. The very specific question of the bankruptcy court was state the damages suffered by your client and that was a fraudulent representation that was set forth in the affidavit. That wasn't an issue before Judge Ramos or Judge McNulty with respect to the raids on five offices on ex parte orders. And it was directed at the court because if Your Honor's review the order that was entered by Judge Tuohy that granted the default judgment, it specifically references that it relied on the very affidavit that Mr. Fulkenflik submitted and that was inaccurate. Mr. Fulkenflik has made reference to the fact that somehow Mr. Bressman was aware of this settlement. The record does not substantiate that statement and in fact the lower court specifically found that the only statement that could be relied upon to support the decision were the accurate and sole statements of Mr. Fulkenflik. In an affidavit and a subsequent submission for RICO damages and representations that he made throughout the proceedings in 2013. So Mr. Fulkenflik throughout these proceedings said it's Mr. Bressman's fault. At one point he told the bankruptcy court, you know, perhaps you could go on ECF. It was everybody's fault except his own but the bankruptcy court and district court found otherwise. So what do we do with Judge Ramos' finding and statement that there was no bad faith? Judge McNulty's statement that wasn't prepared to say there was bad faith. How do we square that with fraud on the court? Because there are two separate time frames and two absolutely distinct issues. Okay, I know you've tried to just go through that but you've got to walk it through. How is the finding, because the no bad faith statements are made in connection with sanctions motions, right? Yeah. But the sanctions motions are covering the same behavior, are they not? They are not. Okay, explain. I will. If Your Honor would review Judge Ramos' sanction decision and the transcript. Judge Ramos never dealt with the March 1998, I'm sorry, 1999 affidavit or the subsequent one for treble damages. The only issues that were before Judge Ramos and Judge McNulty with respect to sanctions were the ex parte applications and orders that were entered. We believe that Mr. Folkenflik submitted false statements to obtain those orders that were completely unrelated to the entry of the initial default judgment. So your position is that in saying he was not sanctionable because there wasn't defining of bad faith, when he went in ex parte and asked for treble damages, or he went in ex parte and was urging additional collection things? What was he doing when he showed up ex parte? Okay, so he showed up before three federal judges, depends which person from his office went. When he went before Judge Ramos, he went in for an attachment order based upon the... He was trying to collect. Trying to collect based upon the default judgments that were entered. The default judgment integrity was never ever before Judge Ramos because nobody knew until the day before the hearing that it was procured based upon fraud. Judge Kodal released the order saying you could share the settlement with your adversaries and more importantly with three federal judges. You can share it with them the day before or two days before we went before Judge Ramos, which was purely on the issue of the ex parte orders. When it gets to Judge McNulty? Judge McNulty followed, as he felt he was obligated to do, the rulings of Judge Ramos on two occasions. First, when the initial ex parte order was entered and after Judge Salas denied it and they refiled it, Judge McNulty was giving full faith and credit by entering orders in New Jersey that were mirror images of New York. Judge McNulty in the record reflects Judge Gordon. It reflects that he was deferring to... So what you're saying is the efforts to collect, there was no bad faith found in the effort to collect, but there is bad faith in the underlying judgment. Yes, Your Honor. And your reasoning for that is that when Judge Ramos was dealing with it, he just didn't know because if he'd known about the default judgment, he'd have come out differently when dealing with the effort to collect on the default judgment. Am I following you? You are, Judge, and Judge Ramos's language in the transcript is crystal clear, that he specifically told us he was not adjudicating the validity of the judgment, which became an issue within 24 or 48 hours before his sanctions hearing on the collection efforts. And as to Judge McNulty, he spoke loud and clear on the issue. He denied sanctions on the ex parte order, but he was the same judge that presided over the application to vacate the default judgment and found that notwithstanding the sanctions ruling, which is crystal clear in his opinion, that a fraud on the court was committed, the bankruptcy court committed no error, and the judgment should be vacated. So, both district court judges on the issue of sanctions versus the issue of vacating the default are crystal clear as to what was before them at that time, and there was no crossover. And in fact, Judge, at the conclusion of the argument before Judge Ramos, Judge Ramos put the question to me in a very pointed fashion. He said, Mr. Sirota, as we sit here today, on my ruling on sanctions, is the default judgment that's been entered valid or not? And I said, Judge, with all due respect, I can't answer that as a yes or no based upon what we learned yesterday. He said, yes or no. I said, it's fraudulent. He said, I'm not getting into the issue. And he didn't get into the issue, rightfully so, because it was brand new. But the courts below, when we brought the application in its entirety, addressed it, and addressed it in a fulsome way, and frankly, their decision should be affirmed. The only other thing that I'd like to address quickly is this idea that somehow, and again, it goes back to an important issue for us because Judge Amber, you spent considerable time on it, with respect to the settlement. There was no opportunity and no ability for anyone to know or articulate that this judgment was procured by fraud until October 2013, when we finally were able to file an application and have Judge Kodal give us access to the order. How could Mr. Bressman have known? Judgement wasn't procured by fraud. The judgment was a legitimate judgment, but a possible setoff was not disclosed to the court, or at least that there was an argument of a setoff. When it was first submitted and the court asked for a statement of the plaintiff's damages, the affidavit that was submitted articulated all of the damages without any disclosure that 10 weeks earlier, the plaintiffs had been paid in full, together with Mr. Falkenfleck's contingency. We believe that was the fraudulently obtained judgment at the inception, but then morphed into a second fraudulent affidavit that resulted in truffle damages. Thank you very much for your time. Mr. Falkenfleck, since we had you up here for about an hour, and I think you have how much time, Michael? Five minutes. Five minutes. We're not going to interrupt you a whole heck of a lot, but we're not going to go beyond five minutes. Well, Your Honor, let me address some of the most important points. First, as to the issue of the standard of review. I did not take a clear position in my reply brief between the issue of whether it was de novo or abuse of discretion. I believe it is de novo review for two reasons. First of all, Judge Ambrow and Gillespie v. Janney, you took the position that it was de novo review, on a review of a vacation of judgment under Rule 60d3. Aren't Rule 60 motions de novo under review? I think that, Your Honor, I think there was some uncertainty about that, but I think that particularly in this case, where effectively Judge Sekaroff ruled on affidavits without having any testimony, so it was like summary judgment proceeding, I think it would be appropriate to be de novo review. Second of all, the proceeding before Judge Ramos and the proceeding before Judge McNulty was not to get an order of attachment. No order of attachment was sought, none was granted. What we were seeking was the ability to obtain information as to the location of assets of Mr. Bressman. Now, Judge McNulty pointed that in his decision on sanctions, that it was clear that Mr. Bressman had hidden assets in offshore trusts, and that's what Judge Ramos found. So there was some basis for that. Let's stand point here. You heard Mr. Shiro to say Judge Ramos specifically and explicitly avoided dealing with the validity of the judgment, focused solely on the sanctions question, and so a finding of no bad faith as to the sanctions is irrelevant to and did not address whether or not there had been a fraud on the court in obtaining of the judgment. So go ahead and respond to that. Yes, I think respectfully, Your Honor, I think that's not true because the Judge Ramos explicitly addressed the fact that I had not disclosed the existence of the settlement, which was not discovered just the day before, although the exact amount was discovered around that time. But the existence of the settlement was Mr. Bressman was aware of throughout the entire period, as I show in the citations below. Mr. Bressman's own affidavits on page 18, footnote 3 of my reply brief. And I had disclosed to Mr. Bressman's lawyer and referenced the docket sheet in the Bressman, in Baxter v. Bressman in October, and so they were aware of that. Judge Ramos explicitly addressed whether my nondisclosure, the exact same nondisclosure that occurred in 2004, whether that nondisclosure was in bad faith. He concluded in 2013 that there was no bad faith in 2013 because of that nondisclosure and what I believe the court order required at that time. There's no reason to believe, and I've sworn, that I had the same belief about what the court order required in 2004. So there is no clear and convincing evidence, no evidence sufficient, that I had a different belief in 2004 and my nondisclosure was for any reason other than the fact that I was barred from disclosing, Judge Ambrose, at that time, the existence of the settlement. Though later when I discovered the error on the docket, I learned that the existence could be disclosed and I certainly wish I knew that when I appeared in front of Judge Steckroth. Because I would have disclosed it. My legal position is sound. Yes, it wasn't presented to anybody. My legal position about the relevance of that money to the set-off in light of the default and the absence of proof was the same. I certainly would have been happy to litigate it then and I had no reason to believe I would benefit and my clients would benefit from not disclosing it. So I would have done it, but the court order prohibited it and I had the same belief earlier as I did later. The next thing is in the quotation I have in my brief about the frankly unthinkable quotation, that had nothing to do with the nondisclosure in 2004 whatsoever. It had to do with an objection that the settling party made to disclosing the dollar amount that was actually paid rather than the amount of the settlement. Those were two different numbers by a bit. And Judge Kodal responded to that and said it would be unthinkable not to disclose the dollar amount to the judge. He said nothing about it being unthinkable that I obeyed the order in the first place. So, you know, I think I'd like to close with saying that I don't think that were this court to consider action with respect to me or if this court is considering the completely separate question of whether or not the judgment should be vacated, I think the standard of proof should still be the same. There should still be compelling evidence that an attorney failed to disclose something he wasn't under a duty to disclose because it was material to the court, because it was legally material, and he was on duty to do that despite the existence of a court order that at the time of the presentation barred the disclosure of the existence of the settlement. So, because I believe that Mr. Bressman's willful default with knowledge of the existence, I mean, he says he's been aware for many years. You said that one final sentence, you get one final sentence. Well, Your Honor, respectfully, I think I hope to persuade this court. I've done a lot of talking and the court's asked some very hard questions, but I hope to persuade this court that in this particular instance, which is throughout my career, that I would always give a court a heads up in a one-sided proceeding if I could because of the extraordinarily unusual circumstances of this case, I felt I did not have the duty and was barred by a court order from doing so. Actually, I do have one final question. Have you ever had any other, any disciplinary proceedings ever brought against you or claims brought against you? The only claim I had brought against me was that when I had commenced in 1983, commenced working, left the firm I had been with, a large firm, went to a smaller firm. I was thrown into the middle of a case. I drafted a letter to go to people who were on a board of a charity and who were trying to conceal the existence of tax fraud by members of the administration of the charity. So I wrote a letter to the board in strong language urging them not to do that. I was unaware at the time that one or two of those members of the board had filed a motion to challenge the election, and so they were represented parties. And I was unaware when that letter went out they were represented. The attorney who is representing them complained to the Bar Association, but no disciplinary action was taken. Okay, thank you. I must say to both counsel, under some very tough questions, excellently argued and very well briefed, we would like to have a transcript prepared of this whole argument, if you would get together with Mr. Williams and have that put in process and split the costs. Thank you very much. And, Your Honor, I invite the court, if the court wishes to have any further proceedings at any time, I'd be happy to do so. Thank you. Thank you. Thank you. Thank you.